June 6, 2018

**Supreme Court**

No. 2017-43-Appeal.
No. 2017-50-Appeal.
(PC 15-2153)

Charles Kemp                :

v.                    :

PJC of Rhode Island, Inc.,      :
d/b/a Rite Aid of Rhode Island, Inc., et al.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2017-43-Appeal.
No. 2017-50-Appeal.
(PC 15-2153)

Charles Kemp                              :

v.                              :

PJC of Rhode Island, Inc.,                 :
d/b/a Rite Aid of Rhode Island, Inc., et al.

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**  The plaintiff, Charles Kemp (plaintiff or Kemp),

appeals from a Providence County Superior Court grant of summary judgment in favor of one of

the defendants, PJC of Rhode Island, Inc., d/b/a Rite Aid of Rhode Island, Inc. (Rite Aid), in a

slip-and-fall action.  Additionally, in these consolidated appeals, the plaintiff appeals from a

denial of his motion for a new trial granted in favor of defendants Riverside Plaza Associates, LP

(Riverside), which owned the shopping center where the Rite Aid was located, and Venditelli &

Sons, Inc. (Venditelli).[1]  This case came before the Supreme Court on May 9, 2018, pursuant to

an order directing the parties to appear and show cause why the issues raised in these appeals

should not be summarily decided.  After hearing the parties' arguments and reviewing their

memoranda, we are satisfied that cause has not been shown.  Accordingly, we shall decide these

appeals at this time without further briefing or argument.  For the reasons set forth herein, we

affirm the order and judgment of the Superior Court in these appeals.

---

[1] Two different judges presided over these matters.  As such, we refer to the judge that presided over the summary-judgment hearing as the hearing justice and the judge that presided over the trial as the trial justice.

1

# I

## Facts and Travel

On February 5, 2014, the plaintiff drove his truck to a Rite Aid store in East Providence while it was snowing. After parking his truck in the lot, he walked into the store to buy cigars. Then, returning to his truck, he located a prescription, and he went back to the store.[2] It was during this second venture back to the store that he tripped and fell over a cement parking stop located in front of his truck in the parking lot. As a result, Kemp injured his right knee, requiring hospitalization, nursing home care, and physical therapy.

At his deposition, Kemp recalled tripping in the parking lot:

> "I pulled [my truck] in head first * * * and there was a big pile of snow on the left so that, you know, there's kind of a walk space between the cars, and because of that big pile of snow, I had to move a little more to the right when I parked the car because the space was narrowed down. * * * [T]hey have those concrete things * * * I had to move over that way, and part of it was sticking out, and I was squeezing * * * this little path like that. * * * I went in the store and I must have just missed the thing because it was just hanging out maybe that much on the side, * * * which if I had been able to park the car where I should, it would be more over to the left."

At trial, Kemp testified that the pile of snow was "[p]robably five [feet] high" and about fifteen feet wide.

Keith Reed, an employee of Riverside, explained in his deposition that, in 2013 and 2014, he was responsible for "snowblow[ing] with the snowblower all the sidewalks [at the shopping center], and then * * * put[ting] salt down and clear[ing] the entrances to all the stores." Moreover, Reed stated that he put salt down on sidewalks and any paths that he shoveled, including the pathways in between the parking stops in front of Rite Aid. Additionally, for the

---

[2] At his deposition, Kemp explained that he did not know why he had chosen to make two separate trips: "I don't know why I did it in a couple stages. * * * I have no idea."

2013-2014 winter season, Riverside had hired Venditelli to perform snow removal at the shopping center, which included the Rite Aid store. At trial, the owner of Venditelli, Andrew Venditelli, testified that the snow pile Kemp had described as about five feet tall was actually only "[m]aybe two to three feet" high.

On May 21, 2015, Kemp filed a complaint against defendants Rite Aid, Riverside, and Venditelli, alleging negligence. On October 2, 2015, Rite Aid moved for summary judgment, contending that it owed no duty of care to plaintiff.

As the basis for its argument, Rite Aid pointed to a section in its lease agreement with Riverside—the owner of the property where the store was located—which provided as follows:

> "Landlord shall, at its sole cost and expense (subject to the following paragraph), keep and maintain the Common Areas in good condition and repair, including but not limited to, restriping (when necessary); repairing and replacing paving and the substrata thereof (Landlord hereby agreeing that it will repave the Common Areas at least once every ten (10) years); *keeping the Common Areas properly policed, drained, free of snow, ice, water, rubbish and obstructions, and in a neat, clean, orderly and sanitary condition*; * * * and maintaining any plantings and landscaped areas. *Landlord shall begin to remove accumulated snow and ice from the Common Areas and diligently prosecute the removal thereof.* Landlord may deposit accumulated ice and snow on portions of the non-exclusive parking areas and other parts of the Common Areas to the extent necessary under the circumstances, but in no event shall any such deposit materially interfere with or otherwise materially disrupt Tenant's use of the Premises, the visibility of the premises from Willett Avenue, and/or the operation of the Tenant's business." (Emphasis added.)

After a hearing on the matter on January 26, 2016, the hearing justice granted Rite Aid's summary-judgment motion. However, no final judgment entered pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure; and, on September 6, 2016, the eve of trial, Rite Aid filed a motion for judgment as a matter of law pursuant to Rule 50 of the Superior Court Rules of

3

Civil Procedure, relying on the same grounds that were presented at the summary-judgment hearing. At the close of all the trial evidence, the trial justice granted this motion.[3]

At the trial, plaintiff pursued his remaining claims against Riverside and Venditelli. There, plaintiff attempted to introduce three photographs that depicted snow in the parking lot. One of the pictures was taken four weeks after plaintiff's fall, and two were taken approximately a year later. The trial justice granted defendants' motion *in limine* to preclude the photographs, explaining that "one of the photographs was taken after a 24-inch snowstorm, [while] another photograph shows substantially less snow * * *." He stated that "for the purpose of the plaintiff's burden of proof in this case, [he did not] feel that the probative value of the[] photos, taken long after the incident in question, outweigh[ed] the prejudicial effect [they] could have on the jury."

At the end of the trial, the jury returned with a verdict in favor of defendants. The plaintiff then moved for a new trial, which was denied. The plaintiff appealed the grant of the motion for summary judgment in favor of Rite Aid, as well as evidentiary rulings made by the trial justice, and the trial justice's denial of his motion for a new trial.[4]

---

[3] We note that counsel for Rite Aid was present at trial, presumably for the purpose of arguing Rite Aid's motion for judgment as a matter of law. We are hard pressed to understand why a party with the benefit of summary judgment in its favor would appear at trial to move for judgment as a matter of law at the close of plaintiff's evidence.

[4] The plaintiff later dismissed his appeal against Venditelli, with prejudice.

## II

### Discussion

### A

### Motion for Summary Judgment

On appeal, plaintiff contends that Rite Aid owed him a duty based on his status as an invitee, regardless of any indemnification agreement Rite Aid may have had with Riverside.[5]

It is a core principle that we review a hearing justice's grant of a motion for summary judgment *de novo*. *High Steel Structures, Inc. v. Cardi Corporation*, 152 A.3d 429, 433 (R.I. 2017). We affirm the hearing justice's decision "only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Boucher v. Sweet*, 147 A.3d 71, 73 (R.I. 2016) (quoting *Newstone Development, LLC v. East Pacific, LLC*, 140 A.3d 100, 103 (R.I. 2016)). "Summary judgment is appropriate when no genuine issue of material fact is evident from the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, and the motion justice finds that the moving party is entitled to prevail as a matter of law." *Providence Journal Co. v. Rhode Island Department of Public Safety ex rel. Kilmartin*, 136 A.3d 1168, 1173 (R.I. 2016) (quoting *Beacon Mutual Insurance Co. v. Spino Brothers Inc.*, 11 A.3d 645, 648 (R.I. 2011)).

---

[5] Rite Aid argues that plaintiff did not comply with Article I, Rule 3(c) of the Supreme Court Rules of Appellate Procedure by failing to list Rite Aid's correct corporate name in the notice of appeal, and, as a result, should be barred from pursuing this appeal. Rule 3(c) provides that "[t]he notice of appeal shall specify the party or parties taking the appeal and shall designate the judgment, order or decree or part thereof appealed from." However, at oral argument plaintiff explained that the inaccuracy amounted to no more than a scrivener's error, and Rite Aid's counsel did not rebut this characterization. Consequently, we treat the error as such and, as a result, see no need to deny plaintiff his appeal on this basis.

5

"To establish a negligence claim, a plaintiff must demonstrate 'a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage.'" *Flynn v. Nickerson Community Center*, 177 A.3d 468, 476 (R.I. 2018) (quoting *Wells v. Smith*, 102 A.3d 650, 653 (R.I. 2014)). Thereafter, for a plaintiff to survive summary judgment on a negligence claim, he or she "must show that he or she is owed a legal duty by the defendant before the three other elements of his or her negligence claim will be considered." *Id.* "[W]hether a defendant is under a legal duty in a given case is a question of law." *Brown v. Stanley*, 84 A.3d 1157, 1162 (R.I. 2014) (quoting *Willis v. Omar*, 954 A.2d 126, 129 (R.I. 2008)).

In Rhode Island, owners and possessors of property have a duty "to exercise reasonable care for the safety of persons reasonably expected to be on the premises * * * include[ing] [*sic*] an obligation to protect against the risks of a dangerous condition existing on the premises, provided the landowner knows of, or by the exercise of reasonable care would have discovered, the dangerous condition." *Lucier v. Impact Recreation, Ltd.*, 864 A.2d 635, 639 (R.I. 2005) (quoting *Kurczy v. St. Joseph Veterans Association, Inc.*, 820 A.2d 929, 935 (R.I. 2003)). With respect to liability of landlords, "a landlord is not liable for injuries that the guest of a tenant suffers on the leased premises, unless the injury results from the landlord's breach of a covenant to repair in the lease, or from a latent defect known to the landlord but not known to the tenant or guest, or because the landlord subsequently has assumed the duty to repair." *Id.* at 640; *see Holley v. Argonaut Holdings, Inc.*, 968 A.2d 271, 274 (R.I. 2009); *see also Reek v. Lutz*, 90 R.I. 340, 344, 158 A.2d 145, 147 (1960) (when a landowner "rents portions of [his or her] property to various tenants but retains control over the portions thereof which are used in common by all the tenants, he [or she] has the duty to keep such portions in a reasonably safe condition").

6

Here, the lease provisions to which Rite Aid points did, in fact, obligate Riverside to control the parking lot. It is undisputed that the lease agreement between Riverside and Rite Aid provided that Riverside would "keep[] the Common Areas * * * free of snow, ice, water * * *."[6] It further stated that Riverside would "begin to remove accumulated snow and ice from the Common Areas and *diligently prosecute* the removal thereof." (Emphasis added.) The lease also specified that Riverside could "deposit accumulated ice and snow on portions of the non-exclusive parking areas and other parts of the Common Areas to the extent necessary under the circumstances * * *"; it provided, however, that "in no event shall any such deposit materially interfere with or otherwise materially disrupt [Rite Aid's] use of the Premises, the visibility of the premises from [the street], and/or the operation of [Rite Aid's] business." Moreover, the lease granted Rite Aid "a *non-exclusive* license" to utilize "the Common Areas in common with * * * other tenants of the Shopping Center, and their respective employees, customers, invitees, licensees, and visitors * * *." (Emphasis added.) It is abundantly clear from the lease agreement that Riverside retained the role of clearing snow from the parking lot where Rite Aid is located, and that Rite Aid also shared its use of the parking lot with other tenants of Riverside.[7] *See MacFarlane v. Applebee's Restaurant*, 378 P.3d 1286, 1287, 1292 (Utah Ct. App. 2016) (holding that tenant business owner had no duty to a plaintiff injured when she slipped in the parking lot where the property's landlord was responsible for maintaining the common areas, per the lease agreement, and the tenant-restaurant had "non-exclusive right of use [of the parking lot] in common with others and with no attendant responsibility or authorization for * * * snow removal"); *see also Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 124-25 (3d Cir. 2010)

---

[6] The definition of "Common Areas" in the lease includes walkways and parking areas.
[7] At oral argument, Riverside's counsel explained that Riverside had withdrawn its objection to Rite Aid's motion for summary judgment after it had deposed plaintiff and clarified that he had tripped in the parking lot as opposed to Rite Aid's entranceway.

7

(declining to impose a duty "on an individual tenant for snow removal from the common areas of a multi-tenant parking lot when the landlord has retained and exercised that responsibility"). Rite Aid, therefore, as the tenant, did not have any duty to clear those common areas. *See Lucier*, 864 A.2d at 640. As such, we agree with the hearing justice that summary judgment in favor of Rite Aid was appropriate because Rite Aid owed no duty to plaintiff in this case.[8]

## B

## Trial and Post-Trial Rulings

### 1

### Exclusion of the Photographs of the Parking Lot

The plaintiff argues that the trial justice erred in granting defendants' motion *in limine*, precluding the admission of plaintiff's photographs of snow piles on dates after the February 5, 2014 incident. In general, "the admissibility of evidence is within the sound discretion of the trial justice * * *." *Cappuccilli v. Carcieri*, 174 A.3d 722, 729 (R.I. 2017) (quoting *Martin v. Lawrence*, 79 A.3d 1275, 1281 (R.I. 2013)). We "will not interfere with the trial justice[']s decision unless a clear abuse of that discretion is apparent." *Berman v. Sitrin*, 101 A.3d 1251, 1259 (R.I. 2014) (quoting *Morel v. Napolitano*, 64 A.3d 1176, 1179 (R.I. 2013)).

Rule 401 of the Rhode Island Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the

---

[8] At oral argument, plaintiff's counsel indicated that, at trial, he had objected to the trial justice's jury instructions to the extent that there was no mention of the reason for Rite Aid's removal from the case. Yet, plaintiff does not appear to challenge the jury instructions in his papers, and as such we do not address that issue now. *See Deutsche Bank National Trust Company for Registered Holders of Ameriquest Mortgage Securities, Inc. v. McDonough*, 160 A.3d 306, 311 n.2 (R.I. 2017) ("Generally, we deem an issue waived when a party [s]imply stat[es] an issue for appellate review, without a meaningful discussion thereof * * *." (quoting *A. Salvati Masonry Inc. v. Andreozzi*, 151 A.3d 745, 750 (R.I. 2017))).

evidence." Yet, Rule 403 of the Rules of Evidence "vests a trial justice with discretion to exclude relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Boscia v. Sharples*, 860 A.2d 674, 678 (R.I. 2004) (quoting R.I. R. Evid. 403).

In reviewing the record, we are satisfied that the trial justice did not abuse his discretion when he excluded the photographs. One of the photographs at issue was taken of the parking lot after a heavy snowfall a number of weeks after the incident, and the others were taken a year or so after plaintiff's accident. The trial justice outlined his reasons for determining that the photographs were irrelevant and stated that, even assuming some relevance, he did not "feel that the probative value of these photos, taken long after the incident in question, outweigh[ed] the prejudicial effect [they] could have on the jury." *See Cappuccilli*, 174 A.3d at 733 ("In weighing that minimal probative value against the significant prejudice that the trial justice recognized, we cannot agree that the trial justice abused his considerable discretion in excluding the evidence."). Not only are we satisfied that the trial justice did not abuse his discretion in ruling that the pictures are irrelevant to Kemp's claims, we also conclude that he did not abuse his discretion in determining that any scintilla of relevance would be outweighed by the prejudicial effect of the photographs before the jury. *See id.* Accordingly, we hold that the trial justice did not abuse his discretion in granting defendants' motion *in limine*.

**2**

**Motion for a New Trial**

With respect to his appeal from the order denying his motion for a new trial, plaintiff maintains that the motion should have been granted because, based on the facts at trial, only one

conclusion could have been reached—that Riverside was negligent, and, thus, the jury did not correctly apply the law regarding negligence. In addition, plaintiff submits that the existence of unusual circumstances precluded application of the Connecticut Rule regarding snow removal. *See Terry v. Central Auto Radiators, Inc.*, 732 A.2d 713, 717 (R.I. 1999).

"[I]t is well settled that our review of a trial justice's decision [on a motion for a new trial] is deferential." *Bates-Bridgmon v. Heong's Market, Inc.*, 152 A.3d 1137, 1143 (R.I. 2017) (quoting *Pawtucket Redevelopment Agency v. Brown*, 106 A.3d 893, 899 (R.I. 2014)). "[I]n considering a motion for a new trial, the trial justice sits as a super juror and is required to make an independent appraisal of the evidence in * * * light of his [or her] charge to the jury." *Berman*, 101 A.3d at 1260 (quoting *King v. Huntress, Inc.*, 94 A.3d 467, 481 (R.I. 2014)). "If, after conducting this analysis, the trial justice concludes that the evidence is evenly balanced or that reasonable minds could differ on the verdict, she [or he] should not disturb the jury's decision." *Martin*, 79 A.3d at 1283 (quoting *Accetta v. Provencal*, 962 A.2d 56, 62 (R.I. 2009)). "If the trial justice has performed this task, then his or her decision * * * 'will not be disturbed unless the plaintiff can show that the trial justice overlooked or misconceived material and relevant evidence or was otherwise clearly wrong.'" *Berman*, 101 A.3d at 1260 (quoting *Botelho v. Caster's, Inc.*, 970 A.2d 541, 546 (R.I. 2009)).

The Connecticut Rule "permits a * * * business invitor[] to 'await a reasonable time after the end of a storm to clear snow and ice *only in the absence of unusual circumstances*.'" *Terry*, 732 A.2d at 717 (quoting *Cooks v. O'Brien Properties, Inc.*, 710 A.2d 788, 792 (Conn. App. Ct. 1998)). Kemp's own testimony demonstrates that it was still snowing when he arrived at Rite Aid. At trial, he testified that it had been snowing "off and on a little" when he reached the store, and there "wasn't much snow on the ground * * *."

Moreover, our review of the record indicates that there was no evidence at trial that any unusual circumstances existed to warrant the application of the exception to the Connecticut Rule. In *Berardis v. Louangxay*, 969 A.2d 1288 (R.I. 2009), we concluded that there was no evidence of any unusual circumstances where the plaintiff fell near the entrance of a bar during a snowstorm. *Berardis*, 969 A.2d at 1292, 1293. There, we explained that it is understood that "a patron of a bar must use the entranceway to get access to the establishment and that an entranceway accumulates ice and snow in a snowstorm." *Id.* at 1293. Here, in denying plaintiff's motion for a new trial, the trial justice referenced the Connecticut Rule, determining that the jury "could very well [have found] that [Riverside] did not have a duty to * * * Kemp in the sense that the landlord gets a reasonable time after the storm has ceased to remove the accumulation." The trial justice further determined that there had been no evidence presented to warrant application of the special-circumstances exception to the Connecticut Rule. We agree that plaintiff failed to put forth any evidence of unusual circumstances regarding the snowy conditions in the parking lot on the day of the incident. *See id.* at 1292, 1293. Consequently, we hold that the trial justice was not clearly wrong in denying plaintiff's motion for a new trial based on the application of the Connecticut Rule. *See id.*

With respect to the pile of snow that was in the parking lot that day, plaintiff argues that the trial justice should have found that Riverside failed to remove snow and inspect the walkways, including the snow pile left from a previous storm. Furthermore, plaintiff contends that the trial justice erred by finding Rite Aid cashier Deborah Monaghan credible as a trial witness because, among other things, she testified that she had not seen the pile of snow that day.

"[A] plaintiff in a slip and fall case must present evidence of an unsafe condition on the premises of which the defendant was aware or should have been aware, and that the condition

existed for a long enough time so the owner of the premises should have taken steps to correct the condition." *Bromaghim v. Furney*, 808 A.2d 615, 617 (R.I. 2002). In the case before us, we are tasked with reviewing the trial justice's ruling on the motion for a new trial. We will only overturn that ruling if the trial justice "overlooked or misconceived material and relevant evidence[,]" and we are satisfied that neither happened here. *Berman*, 101 A.3d at 1260 (quoting *Botelho*, 970 A.2d at 546).

In denying plaintiff's motion for a new trial, the trial justice highlighted that Kemp explained that he had tripped on the concrete parking stop, not on the large pile of snow. Nonetheless, Kemp had testified that it was snowing when he arrived at Rite Aid and also that the pile of snow forced him to park his truck "farther to the right." Even taking this testimony into account and finding Kemp credible, the trial justice simultaneously found defendants' witnesses credible, and he ultimately agreed with the jury's verdict. Specifically, he expressed that "the evidence in this case does not strongly preponderate against the jury verdict, nor is it sharply conflicting and it is such that reasonable minds could reach different conclusions[.]" We cannot say that the trial justice "either overlooked or misconceived evidence or that he was clearly wrong," and, thus, we must uphold his denial of the motion for a new trial. *Cappuccilli*, 174 A.3d at 732.

Turning to plaintiff's contention that the trial justice erred by finding Monaghan credible, we emphasize that whether or not an individual witness is credible is squarely a determination for the trial justice. *See Gomes v. Rosario*, 79 A.3d 1262, 1267 (R.I. 2013). "This Court, reading an inanimate transcript, is not well positioned to weigh evidence or determine credibility." *Id.* As a result, and based on the record, we are satisfied that the trial justice did not err in finding Monaghan credible. Her testimony regarding the snow pile does not necessitate

that her testimony regarding other details was unreliable.  Accordingly, the trial justice did not abuse his discretion by finding her testimony credible, and thereafter denying the motion for a new trial.  *See Bates-Bridgmon*, 152 A.3d at 1143.

## III

## Conclusion

Therefore, the order and judgment appealed from are affirmed.  The record may be returned to the Superior Court.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Charles Kemp v. PJC of Rhode Island, Inc., d/b/a Rite Aid of Rhode Island, Inc., et al. |
| **Case Number** | No. 2017-43-Appeal. No. 2017-50-Appeal. (PC 15-2153) |
| **Date Opinion Filed** | June 6, 2018 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Joseph A. Montalbano |
| **Attorney(s) on Appeal** | For Plaintiff: Ronald J. Resmini, Esq. |
| | For Defendants: Darryl Dayian, Esq. Lauren D. Wilkins, Esq. Gregory A. Carrara, Esq. Dennis S. Baluch, Esq. |