April 4, 2019

**Supreme Court**

No. 2018-73-Appeal.

(WC 15-553)

Claire Letizio et al.          :

v.          :

Natale J. Ritacco et al.          :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Claire Letizio et al.          :

v.                   :

Natale J. Ritacco et al.        :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Indeglia, for the Court.**  In this negligence action, the plaintiffs, Claire Letizio and Christopher Letizio (the Letizios), appeal from an order of the Superior Court denying their motion for a new trial after a jury found in favor of the defendants, Natale J. Ritacco and Margaret H. Ritacco (the Ritaccos).  This matter came before the Court on February 28, 2019, pursuant to an order directing the parties to appear and show cause why the issues raised should not be summarily decided.  After considering the arguments set forth in the parties' memoranda and at oral argument, we are convinced that cause has not been shown.  Thus, further argument or briefing is not required to decide this matter.  For the reasons outlined below, we affirm the order of the Superior Court.

## I

## Facts and Travel

The facts of this case, which are largely undisputed, are as follows.  On March 5, 2015, there had been a light snowfall, leading to some accumulation at the Ritacco residence in Westerly, Rhode Island.  The Ritacco residence has a long, relatively flat driveway and a side entrance with two stone steps that lead up to a side door.  That day, Mr. Ritacco cleared the snow off his driveway

using a snow blower. He used a shovel to clean the stone steps. As was his custom, he did not spread ice melt, fearing that it could be tracked into the house after having been caught underfoot. Also, when later asked if he had spread ice melt, he recalled that there was no surface "icing up" on that day.

The next day, March 6, was a cold but sunny day in Westerly, and there was no precipitation all day. That night, sometime between 5:30 p.m. and 6 p.m., Mrs. Letizio arrived at the Ritacco residence, along with her daughter, who went there to meet the Ritaccos' daughter and two other classmates to get ready for a high school dance that was taking place later that night. Mrs. Letizio parked in front of the right bay door of the Ritaccos' garage, which was located at the end of their driveway, and proceeded to the side door of the house. As she was making her way up the steps, Mrs. Letizio's daughter slipped on some ice that had formed on the stone stairs, but she was not injured.

Once in the house, the girls went upstairs to get ready for the dance. Mrs. Letizio waited downstairs with Mr. Ritacco and informed him multiple times that his steps were icy.[1] After Mrs. Ritacco had arrived home and the girls had finished getting ready, Mrs. Letizio told the Ritaccos that she could give the girls a ride to the dance because her house was close to the school where the dance was taking place. Sometime around 7 p.m., as she was getting ready to leave, Mrs. Letizio reminded Mr. Ritacco that it was getting icy outside and that the steps were icy. As a result, Mr. Ritacco advised Mrs. Letizio and the girls to leave the house through the garage.[2] However, Mr. Ritacco did not follow the group outside of his home.

---

[1] There was conflicting testimony regarding whether Mrs. Letizio told Mr. Ritacco that her daughter had slipped on the steps. However, both parties agree that Mrs. Letizio told Mr. Ritacco that the steps were icy.
[2] There is some dispute about whether the group exited through the overhead garage doorway, or a side access door in the garage. However, this fact is not crucial to the outcome of this case.

Upon arriving outside, the girls safely entered Mrs. Letizio's vehicle through the passenger's side front and back doors. Mrs. Letizio was not so fortunate. As she was walking to the driver's side front door, she slipped on some ice that had formed on the pavement near the front left wheel of her car, and she broke her ankle. She lay on the ground until she was able to get the attention of her daughter, who immediately went to get the Ritaccos to aid her mother. Although the Ritaccos offered to call for an ambulance, Mrs. Letizio refused, and instead ambulated herself into the passenger's front seat of the vehicle. Mrs. Ritacco then drove Mrs. Letizio to the hospital, while Mr. Ritacco brought the girls to the dance. On his way home, Mr. Ritacco purchased some ice melt at the store, which he later spread on the area of his driveway where Mrs. Letizio had fallen.

At the hospital that night, doctors discovered that Mrs. Letizio had fractured the tibia, fibula, as well as the talus bones in her leg as a result of the fall.[3] However, due to the swelling in her leg, doctors could not perform surgery at that time, so she was sent home and told to return five days later. Then, on March 11, Mrs. Letizio underwent an open reduction, internal fixation surgery, in which doctors inserted six screws, two wires, and a plate to mend the broken bones in her leg. As a result, Mrs. Letizio endured hundreds of hours of treatment and physical therapy.

The Letizios filed a complaint in Washington County Superior Court on November 12, 2015, alleging negligence against the Ritaccos, and seeking damages for the cost of Mrs. Letizio's medical expenses and lost wages, as well as pain and suffering.[4] Additionally, they sought punitive damages, alleging that the Ritaccos' conduct was reckless and willful. The parties

---

[3] This is known as a "trimalleolar" fracture.
[4] Mr. Letizio brought a claim for loss of consortium.

attempted, unsuccessfully, to arbitrate their dispute. Later, a three-day trial began on July 24, 2017, during which the jury heard from six witnesses, all called by the Letizios.

The Letizios called Mr. Ritacco as their first witness, pursuant to G.L. 1956 § 9-17-12.[5] He recounted that March 5, 2015, was a cold and snowy day and that he had cleared off the driveway with his snow blower and the stone steps with a shovel. Mr. Ritacco stated that the next day, when he went out to get the paper and the mail, there was no visible ice on the driveway. He also testified that there was no ice around the spot where he had parked his car when he went to pick up his daughter from school, between 2:30 p.m. and 3 p.m. Mr. Ritacco stated that Mrs. Letizio informed him of the icy condition of the steps when she walked into the house. Additionally, after having his memory refreshed, he testified that, as she was getting ready to leave, Mrs. Letizio reminded Mr. Ritacco that the steps were icy; therefore, Mr. Ritacco led the guests out a different way. He testified that he pointed them to the garage, that they exited through a door attached to the garage, and that Mrs. Letizio slipped soon after the group was outside. He also noted that, although he went outside to aid Mrs. Letizio, he was unable to help Mrs. Letizio to her feet because he had a bad back. Upon further questioning from the Letizios' counsel, Mr. Ritacco testified that he had not put ice melt on the driveway, despite the fact that the area where Mrs. Letizio slipped was in the shade for most of the day. On cross-examination by his attorney, Mr. Ritacco noted that the driveway was clear and clean after he was done removing the snow on March 5. He also testified that, during the day on March 6, his car was parked in the same area where Mrs. Letizio would later park her car that night.

---

[5] General Laws 1956 § 9-17-12 states: "No person shall be disqualified from testifying in any civil action or proceeding by reason of his or her being interested therein or being a party thereto."

The Letizios called Mrs. Ritacco to the stand next. Her version of events did not differ substantially from that of Mr. Ritacco. She testified that she had no independent recollection regarding whether her husband used ice melt on the driveway on March 6; she did however indicate that it was not his regular practice to do so every time it snowed. On that day, she had pulled into the garage after she arrived home from work. Mrs. Ritacco testified that she did not recall Mrs. Letizio mentioning ice, but that she did recall admonishing the girls to be careful because they were wearing high heels and it was cold outside. On cross-examination by her own attorney, Mrs. Ritacco recalled letting the guests out of the side access door inside the garage. She indicated that the lights by the garage door were on, illuminating the portion of the driveway where Mrs. Letizio had parked her car. Finally, she testified that she had driven Mrs. Letizio to the hospital in Mrs. Letizio's vehicle after walking roughly the same path that Mrs. Letizio took; Mrs. Ritacco specifically noted that she did not encounter any ice in her path.

Next, the Letizios' daughter testified that she slipped and fell multiple times on the stone steps as she was walking into the Ritaccos' house on the evening of March 6. She stated that her mother was nervous and that her mother told Mr. Ritacco that there was ice on the steps and that it was icy outside. She also indicated that she heard Mr. Ritacco tell her mother that he did not use ice melt because he did not like having it tracked into his house.

Finally, Mrs. Letizio testified that she had driven her daughter to the Ritaccos' house on the evening of March 6.[6] She recalled seeing her daughter slip while attempting to make her way up the steps and that she was "very shocked" to see so much ice on the steps. She also stated that she told Mr. Ritacco that the steps were icy and that her daughter had slipped twice. Mrs. Letizio

---

[6] The Letizios' damages are not at issue on appeal. Therefore, we will not discuss the testimony of Mr. Letizio and Adrian Hamburger, M.D., who testified only to the damages that the Letizios had incurred.

then testified that she told the Ritaccos that they could not use the entrance with the stone steps to leave, and that Mr. Ritacco told her to go through the garage. She recalled exiting the house from the overhead garage-door opening, not through the side access door as the Ritaccos had recalled in their testimony. Mrs. Letizio testified that she slipped as she was approaching the front left wheel of the car, and that she laid on her back on the ground for several minutes before anyone went out to help her.

On cross-examination by the Ritaccos' attorney, Mrs. Letizio stated that the driveway "[a]ppeared fine" when she arrived at the Ritacco house on the evening of March 6. She recounted that the driveway was clear to the pavement and that there was no visible ice in the driveway. She noted that the sun was still up when she arrived and that there was enough light to see where she was going when she left. Mrs. Letizio testified that she had not seen any ice as she walked from the garage to her vehicle before she slipped. She also recalled that neither Mrs. Ritacco nor Mr. Ritacco had slipped when they went outside to help her.

After plaintiffs had rested their case, the Ritaccos moved to dismiss the punitive damages claim; that claim was dismissed after the Letizios made no objection. The Ritaccos then rested; the attorneys gave their closing arguments; and the trial justice charged the jury on the law of negligence generally, and then specifically as to cases of premises liability with respect to invitees, informing them that, in order to find for the Letizios, they "must determine that the [d]efendants knew or should have known of the defect or condition which is alleged to have caused the [p]laintiff's fall, and that the [d]efendants failed to remedy the defect or condition within a reasonable time." He also instructed the jury regarding the adverse inferences it could draw from subsequent remedial measures, such as Mr. Ritacco placing ice melt on the driveway after Mrs.

Letizio's fall. Neither party objected to the jury instructions. After deliberating, the jury rendered a verdict in favor of the Ritaccos.

Subsequently, the Letizios moved for a new trial under Rule 59 of the Superior Court Rules of Civil Procedure, arguing that the verdict was against the weight of the evidence and failed to do substantial justice between the parties. A hearing on the motion was held on August 22, 2017, and the trial justice issued a bench decision on August 31, 2017. In that decision, the trial justice set forth an in-depth analysis of the testimony of the four witnesses to the events that occurred on the evening of March 6, 2015. He took special note of the fact that there had been no precipitation on March 6, 2015, and he discounted the weight of the testimony regarding how the shadows in the driveway may have caused the ice to form. He also noted that the there was no dispute that the driveway was clear of snow to the pavement when Mrs. Letizio and her daughter arrived. Additionally, the trial justice stated that it was not *per se* negligent to not put ice melt on a driveway as a preventative measure. He then determined that, in light of all the evidence that he had discussed, and his instructions to the jury, he could not fault the jury for finding as they had in this case. After setting forth his duties under Rule 59, the trial justice stated:

> "The Supreme Court has explained * * * that where on the credible evidence reasonable minds can differ as to the inferences to be drawn from the evidence and the ultimate conclusion, that in that case the verdict of the jury should stand. I think this is such a case, and that's the reason I'm going to deny the motion for a new trial."

An order entered on September 8, 2017, denying the Letizios' motion for a new trial; and, on September 14, 2017, the Letizios timely appealed to this Court.

## II

## Standard of Review

"It is well settled that our review of a trial justice's decision on a motion for a new trial is deferential." *Kemp v. PJC of Rhode Island, Inc.*, 184 A.3d 712, 719 (R.I. 2018) (brackets omitted) (quoting *Bates-Bridgmon v. Heong's Market, Inc.*, 152 A.3d 1137, 1143 (R.I. 2017)). "In considering a motion for a new trial, the trial justice sits as a super juror and is required to make an independent appraisal of the evidence in light of his or her charge to the jury." *Id.* (brackets and deletion omitted) (quoting *Berman v. Sitrin*, 101 A.3d 1251, 1260 (R.I. 2014)). "If, after conducting this analysis, the trial justice concludes that the evidence is evenly balanced or that reasonable minds could differ on the verdict, she or he should not disturb the jury's decision." *Id.* (brackets omitted) (quoting *Martin v. Lawrence*, 79 A.3d 1275, 1283 (R.I. 2013)). "If the trial justice has performed this task, then his or her decision will not be disturbed unless the plaintiff can show that the trial justice overlooked or misconceived material and relevant evidence or was otherwise clearly wrong." *Id.* (deletion omitted) (quoting *Berman*, 101 A.3d at 1260).

## III

## Discussion

It is well settled that "[t]o establish a negligence claim, a plaintiff must demonstrate a legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage." *Kemp*, 184 A.3d at 717 (quoting *Flynn v. Nickerson Community Center*, 177 A.3d 468, 476 (R.I. 2018)).

This case turns on the duty that landowners owe to those who enter onto their premises and, specifically, whether the Ritaccos breached that duty. "With respect to invitees and licensees, courts must determine whether landowners have satisfied their affirmative duty to exercise

reasonable care for the safety of all people reasonably expected to be upon the premises." *Bucki v. Hawkins*, 914 A.2d 491, 495 (R.I. 2007). "That duty includes an obligation to protect against the risks of a dangerous condition existing on the premises, provided the landowner knows of, or by the exercise of reasonable care would have discovered, the dangerous condition." *Id.* (brackets omitted) (quoting *Mead v. Papa Razzi Restaurant*, 840 A.2d 1103, 1107 (R.I. 2004)).

Consistent with this standard, the Letizios first argue that, while there was no evidence that Mr. Ritacco had actual knowledge of the ice on his driveway, there was overwhelming evidence that he had constructive knowledge of the dangerous condition; they contend that no reasonable person could have found otherwise. They base this argument on the fact that the stone steps and the part of the driveway on which Mrs. Letizio had fallen receive the same amount of sunlight during the day.

However, it is clear to us that the trial justice properly performed his task under Rule 59. He analyzed the testimony at trial, clearly considering the testimony that the driveway and stone steps received the same amount of sunlight. He also took into consideration, however, the fact that both Mr. Ritacco, and later, Mrs. Letizio, saw no ice on the driveway prior to the incident. To the trial justice, this case came down to the question of whether a "reasonably prudent New England homeowner" was required to perform an inspection on his property upon being informed of the existence of ice on his steps. In his decision, the trial justice stated: "My job now under Rule 59 is to review the evidence as I have, and exercise my independent judgment as to whether the jury verdict was supported by the evidence, and whether or not it did substantial justice between the parties." In the end, he determined that he could not find fault in the fact that the jury rendered a verdict for the Ritaccos and that, therefore, this case fell squarely into the situation where if "the trial justice concludes that the evidence is evenly balanced or that reasonable minds could differ

on the verdict, she or he should not disturb the jury's decision." *Kemp*, 184 A.3d at 719 (brackets omitted) (quoting *Martin*, 79 A.3d at 1283).

Even so, the Letizios argue before this Court that the jury may have misunderstood that the Ritaccos did not need to have knowledge of the *specific spot* where the dangerous condition existed. They cite *Aubin v. MAG Realty, LLC*, 161 A.3d 1143 (R.I. 2017), to advance this contention. In that case, the plaintiff slipped and fell on a patch of ice in the parking lot of his apartment building. *Aubin*, 161 A.3d at 1145. The plaintiff sued the owner of the complex, alleging negligence. *Id.* The case went to trial, and the defendant moved for judgment as a matter of law at the close of the plaintiff's case, arguing that it had no notice of the dangerous, icy condition of the parking lot. *Id.* The trial justice granted the motion after both parties had rested, and the plaintiff appealed. *Id.*

On appeal, the defendant in *Aubin* argued that the decision granting judgment as a matter of law should be upheld because the plaintiff had only complained generally about icy conditions and the defendant had no knowledge of the specific patch of ice upon which the plaintiff fell. *Aubin*, 161 A.3d at 1147. We held that there was enough evidence to send the case to the jury, stating:

> "The defendant had notice that icy conditions were present on its property during certain types of weather, and that icy conditions would come and go as the weather changed. In our opinion, it would be impractical to burden a tenant with the responsibility to call his landlord every day to give notice of new patches of ice in order to satisfy the notice requirement of a premises liability claim. Rather, this burden is sustained by providing notice of the recurring condition." *Id.*

Unlike the motion for a new trial at issue here, the grant of the motion for judgment as a matter of law in *Aubin* was based on that trial justice's determination that no reasonable juror could have found that the defendant had knowledge of the ice on the premises. *See Aubin*, 161 A.3d at

1145. At trial in the present case, Mr. Ritacco testified that he knew that the area of the steps and driveway receive similar amounts of sun and was susceptible to refreezing when the temperature dropped. Certainly, as we held in *Aubin*, there may have been enough evidence for a jury to determine that the Ritaccos had constructive knowledge of the icy conditions generally. *See id.* at 1147. However, as the trial justice noted, reasonable minds could differ on this point, as there was evidence that Mrs. Letizio had not seen any ice on the driveway at the same time that she saw ice on the stone steps. Therefore the jury, and the trial justice acting as the super juror, was not *required* to make a finding that the Ritaccos had constructive notice of the ice on the driveway after receiving actual notice of the ice on the steps.

This Court has noted that "[a] plaintiff in a slip and fall case must present evidence of an unsafe condition on the premises of which the defendant was aware or should have been aware, and that the condition existed for a long enough time so the owner of the premises should have taken steps to correct the condition." *Kemp*, 184 A.3d at 720 (quoting *Bromaghim v. Furney*, 808 A.2d 615, 617 (R.I. 2002)). In this case, from our review of the evidence, there was little testimony regarding how long the ice had been on the driveway. What we do know is that, when Mrs. Letizio exited her car sometime between 5:30 p.m. and 6 p.m. that evening, she did not see any ice on the driveway. Additionally, the weather had been dry for approximately twenty-four hours after the previous day's light snowfall, meaning that no new precipitation had accumulated on the driveway between the time Mrs. Letizio left her car to enter the house and the time she fell on the driveway. Moreover, Mr. Ritacco testified that he had parked in the same spot as Mrs. Letizio earlier that day and had not noticed any ice on the driveway. Viewing this evidence together, it was reasonable for the jury, and later the trial justice, to find that the Ritaccos had no constructive knowledge of the ice on the driveway generally or on the *specific patch* upon which Mrs. Letizio slipped.

Finally, the Letizios argue that the trial justice should have recognized that the Ritaccos had not fulfilled their duty as landowners to *warn* Mrs. Letizio of the icy condition of their driveway. While it is true that a landowner does have a duty to either remediate or warn licensees and invitees on their property, this duty does not arise unless and until the property owner has at least constructive knowledge of the dangerous condition. *See Fisher v. Almac's, Inc.*, 117 R.I. 244, 244-45, 366 A.2d 161, 162 (1976). Accordingly, without a finding that the Ritaccos had some knowledge of the icy condition on the driveway, no reasonable jury could have imposed liability on the Ritaccos, even for a failure to warn Mrs. Letizio of the dangerous condition on the driveway.

"This Court has adhered to the long-standing principle that 'generally, the question of negligence is a question of fact to be determined by the jury.'" *Dent v. PRRC, Inc.*, 184 A.3d 649, 654 (R.I. 2018) (brackets and deletion omitted) (quoting *Clarke v. Rhode Island Electric Lighting Co.*, 16 R.I. 463, 465, 17 A. 59, 60 (1889)). Here, in its role as factfinder, the jury seemingly rejected any possible inferences that could have been drawn in favor of the Letizios on the issue of the Ritaccos' knowledge of the ice on the driveway when it determined that they were not negligent; the trial justice found that the jury's determination was not in error because the evidence was evenly balanced in this case. After thorough consideration of the record before us, we are not convinced that the trial justice "overlooked or misconceived material and relevant evidence or was otherwise clearly wrong" in this case while acting in his capacity as super juror. *Kemp*, 184 A.3d at 719. Accordingly, we affirm his decision denying the Letizios' motion for a new trial.

## IV

## Conclusion

For the reasons stated herein, we affirm the order of the Superior Court. We remand the papers to that tribunal.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Claire Letizio et al. v. Natale J. Ritacco et al. |
| **Case Number** | No. 2018-73-Appeal. (WC 15-533) |
| **Date Opinion Filed** | April 4, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ. |
| **Written By** | Associate Justice Gilbert V. Indeglia |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Bennett R. Gallo |
| **Attorney(s) on Appeal** | For Plaintiffs: <br><br> Todd D. White, Esq. <br><br> For Defendants: <br><br> Robert P. Corrigan, Esq. |