June 27, 2019

**Supreme Court**

No. 2018-195-Appeal.
(PC 14-2370)

|  |  |
|---|---|
| Daryl Heneault | : |
| v. | : |
| Kenneth Lantini et al. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Daryl Heneault          :

v.               :

Kenneth Lantini et al.     :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

# O P I N I O N

**Justice Flaherty, for the Court.**  The defendants, Kenneth Lantini and 1200 Hartford LLC, appeal from an order of the Superior Court denying their motion for a new trial after a jury found in favor of the plaintiff, Daryl Heneault.  The defendants argue that the economic loss doctrine bars the plaintiff from recovering damages for the tort of conversion and that the trial justice erred in awarding attorneys' fees to the plaintiff.  This case came before this Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided.  After hearing the arguments of counsel and examining the memoranda filed on behalf of the parties, we are of the opinion that cause has not been shown, and we proceed to decide the appeal at this time without further briefing or argument.  For the reasons set forth in this opinion, we affirm in part and vacate in part the judgment of the Superior Court.

# I

## Facts and Travel

This case was born of a lease agreement gone bad. The plaintiff entered into a lease with defendants to rent commercial property owned by defendants in the Town of Johnston. On or about October 31, 2013, plaintiff paid defendants the sum of $18,600, which represented $9,300 for a security deposit and $9,300 for the first month's rent. A document, referred to by the parties as a "receipt agreement," and dated that same day, was signed by the parties; it contained the following language: "IF FOR ANY REASON, MR KENNETH LANTINI IS UNABLE TO PROVIDE OCCUPANCY, ON OR BEFORE, NOVEMBER 14, 2013, ALL DEPOSITS ARE FULLY REFUNDABLE." Thereafter, on November 5, 2013, the parties entered into the lease agreement.[1] The term of the lease was scheduled to begin on November 14, 2013. Before the lease period could begin, however, and for reasons further discussed *infra*, plaintiff was unable to occupy the commercial premises. As a result, plaintiff requested the return of the $18,600 payment he made to defendants. Although a sum of $9,300, representing the first month's rent, was eventually returned to plaintiff, defendants refused to return the $9,300 security deposit. Consequently, plaintiff filed an action in the Superior Court against defendants, alleging that the refusal to return the security deposit constituted a conversion of plaintiff's property as well as a breach of contract.[2]

---

[1] Although plaintiff signed the receipt agreement and lease agreement on behalf of GM Research Group, Inc. (the name of which was corrected to GM Management, Inc. on the lease agreement and was referred to as such in plaintiff's complaint), the record reflects that plaintiff was the successor-in-interest and assignee to the company. Moreover, Mr. Lantini is the principal of 1200 Hartford LLC. He personally signed the receipt agreement, but signed the lease agreement on behalf of 1200 Hartford LLC.

[2] Subsequently, defendants filed an answer to the complaint and a counterclaim against plaintiff alleging that plaintiff "has not fulfilled all his duties and obligations" under the lease agreement. As such, defendants claimed that plaintiff's actions constituted a default and a breach of the lease

In November 2017, one day before trial was to commence, the Superior Court heard motions *in limine*. However, defendants also filed a motion to dismiss and/or strike, scheduled to be heard that day, arguing that plaintiff's claim for conversion was barred by the economic loss doctrine.[3] In response, plaintiff contended that the motion was not timely filed; indeed, plaintiff's counsel stressed that he did not receive a copy of defendants' motion until the previous afternoon, while he was preparing for trial. The trial justice denied the motion, ruling that it was not timely.

Over the following two days, a jury trial was conducted, and both plaintiff and Mr. Lantini testified. The plaintiff testified that he and his associates intended to grow medical marijuana in the building and that they were certified by the state to do so.[4] The plaintiff said that, prior to the November 14, 2013 start date on the lease, Mr. Lantini permitted plaintiff and his associates to move some equipment into the building. However, plaintiff testified, on November 2 or November 3, an official from the Town of Johnston posted a condemnation notice on the door of the building. According to plaintiff, he and his associates were then allowed to remove their equipment and belongings from the building.

The plaintiff testified that, according to Mr. Lantini, a meeting was later held with the mayor of Johnston, and, although Mr. Lantini attended that meeting, plaintiff did not. According to plaintiff, Mr. Lantini told him that the mayor was adamant that the marijuana operation was

---

agreement. Both parties sought compensatory damages, punitive damages, interest, costs, and attorneys' fees.

[3] Neither the motions *in limine* nor defendants' motion to dismiss appear on the lower court docket.

[4] We note that, although plaintiff intended to grow medical marijuana in the commercial building, Section 5 of the lease agreement provided: "Use: The Tenant covenants and agrees to use the Premises only for an indoor gardening facility and for no other purpose. Tenant shall not use or permit the Premises to be used for any other purpose without the prior written consent of the Landlord endorsed hereon." We also pause to remark that Section 18 of the lease agreement read: "The Tenant agrees to observe and comply with all laws, ordinances, rule[s] and regulations of the Federal, State, County, [and] Municipal authorities applicable to Premises and the business conducted by the Tenant at the Premises."

illegal, that he did not want such an operation in the proximity of town hall, and that plaintiff and his associates should leave the building. The plaintiff further testified that Mr. Lantini told him to "just forget about it." The plaintiff recounted that he then asked Mr. Lantini for the return of the $18,600 payment he had made, but Mr. Lantini informed him that plaintiff should contact the real estate broker involved with the lease agreement to retrieve the $9,300 for the first month's rent. As for the $9,300 security deposit, however, plaintiff testified that Mr. Lantini told him that he was keeping it "for his aggravation." The plaintiff testified that he never received notice from Mr. Lantini that there was any damage to the property, or any assertion that he was in default under the lease.

Mr. Lantini testified that, before October 31, 2013, he agreed to lease the commercial premises to plaintiff for the purpose of growing medical marijuana. Mr. Lantini further testified that he gave the first month's rent of $9,300 to a real estate broker involved in the transaction as a means of paying the broker's commission, but that he retained the $9,300 security deposit. Mr. Lantini also agreed that it was the town's actions that prevented plaintiff from occupying the premises, and that, according to Mr. Lantini, the mayor was dead set against a marijuana operation in town. Mr. Lantini conceded that plaintiff had indeed made a demand for the return of his $18,600 payment. According to Mr. Lantini, he informed plaintiff that he should contact the broker for the $9,300 payment for the first month's rent, and he added that the broker did in fact return the $9,300 payment for the first month's rent to plaintiff. However, Mr. Lantini testified that he refused to return the $9,300 security deposit because plaintiff walked away from the lease "without even trying to do anything."

Mr. Lantini also testified that he did not interfere with plaintiff's right to possess the property in any way, that it was plaintiff's responsibility, and not his, to obtain the necessary

permits for his operation, and that he believed that plaintiff was in default of the lease agreement because he had not paid any rent. However, Mr. Lantini was impeached with his deposition testimony, in which he said that he and the real estate broker gave back the $9,300 payment to plaintiff for the first month's rent. Mr. Lantini also testified at trial that he never executed a termination of the lease agreement and he acknowledged that there was no damage to the building.

After the parties rested,[5] the trial justice instructed the jury. Although the trial justice's instructions included the elements that were necessary to prove plaintiff's claim for conversion and defendants' counterclaim for breach of contract, they did not contain the elements with regard to plaintiff's breach of contract claim. There were no objections to the court's charge to the jury.

On that same day, the jury returned a verdict, finding that defendants had converted plaintiff's security deposit to their own use. On that count, the jury awarded plaintiff $9,300 in damages.[6]

Thereafter, posttrial motions were heard. At that hearing, defendants again argued that plaintiff's claim for conversion should have been barred by the economic loss doctrine—the same argument that was the basis for the motion to dismiss and/or strike that the trial justice had ruled to be untimely before trial. The defendants also argued that they should be granted a new trial

---

[5] When plaintiff rested, defendants argued, outside of the presence of the jury, for judgment as a matter of law pursuant to Rule 50 of the Superior Court Rules of Civil Procedure. In their argument, defendants contended that no evidence had been presented that Mr. Lantini had breached the lease agreement, and therefore defendants sought to dismiss plaintiff's breach of contract claim. The court denied the Rule 50 motion. However, the record also reflects that defendants never argued at that time, or at any time during the trial, that the economic loss doctrine barred plaintiff from recovering economic damages under the tort of conversion.

[6] The jury also awarded plaintiff punitive damages, but did not include an amount. Furthermore, the jury found that, with respect to defendants' counterclaim for breach of contract, plaintiff had not breached or defaulted on the lease agreement.

- 5 -

because there was no evidence presented to the jury that indicated that defendants had breached a contract, and the jury charge never instructed the jury to find whether Mr. Lantini was in breach.

For his part, plaintiff contended that, pursuant to G.L. 1956 § 9-1-45, he was entitled to attorneys' fees because "against all the evidence, Mr. Lantini continued to claim that he was in the right, he had the right to not only retain the $9,300 security deposit, but also to countersue [plaintiff] for tens of thousands of dollars on breach of contract."

The trial justice found, when addressing the posttrial motions, that the economic loss doctrine did not apply to the case at bar because the case sounded in breach of contract, and he therefore denied defendants' motion for new trial.[7] Moreover, the trial justice awarded attorneys' fees to plaintiff under § 9-1-45 in the sum of $24,075 because, according to the trial justice, the case arose out of a breach of contract, there was no justiciable issue of law, and the amount that plaintiff sought to recover for his attorneys' fees was reasonable. An order entered granting plaintiff's motion for costs and attorneys' fees, and denying defendants' renewed motion to dismiss and/or strike and motion for a new trial. Judgment entered on January 2, 2018, awarding plaintiff compensatory damages plus interest, costs, and attorneys' fees.

For reasons that cannot be discerned from the record, defendants filed a second motion for a new trial, and a hearing took place on January 8, 2018. At that hearing, defendants again argued that they were entitled to a new trial because the economic loss doctrine barred plaintiff from recovering any damages under the conversion claim. Once more, defendants contended that the doctrine applied to this case because plaintiff did not suffer a personal injury, but economic damages only. Although defendants acknowledged that plaintiff included a breach of contract

---

[7] The trial justice did, however, grant defendants' Rule 50 motion in part, with respect to the jury's finding in favor of plaintiff on his claim for punitive damages.

claim in his complaint, they pointed out that plaintiff indicated at trial that defendants never breached the contract, and that the jury charge never included an instruction for the breach of contract claim against defendants. Moreover, defendants argued that attorneys' fees should not have been awarded to plaintiff because plaintiff's breach of contract claim against defendants was not submitted to the jury and, therefore, it could not be said that the award arose from a breach of contract claim.

The trial justice disagreed. He found that he had based the attorneys' fees award on a breach of contract, even though there was not a specific instruction to the jury on plaintiff's breach of contract claim. He reasoned that there had been general instructions on contract law and whether the parties had abandoned the contract in the charge. The trial justice also held that the economic loss doctrine did not bar plaintiff's recovery. Therefore, the trial justice denied defendants' motion for a new trial and he affirmed the award of attorneys' fees to plaintiff. An order denying defendants' motion for a new trial was entered on January 10, 2018. The defendants timely appealed.

## II

### Standard of Review

"It is well settled that our review of a trial justice's decision on a motion for a new trial is deferential." *Letizio v. Ritacco*, 204 A.3d 597, 602 (R.I. 2019) (quoting *Kemp v. PJC of Rhode Island, Inc.*, 184 A.3d 712, 719 (R.I. 2018)). "In considering a motion for a new trial, the trial justice sits as a super juror and is required to make an independent appraisal of the evidence in light of his or her charge to the jury." *Id.* (quoting *Kemp*, 184 A.3d at 719). "If, after conducting this analysis, the trial justice concludes that the evidence is evenly balanced or that reasonable minds could differ on the verdict, she or he should not disturb the jury's decision." *Id.* (quoting

*Kemp*, 184 A.3d at 719). "If the trial justice has performed this task, then his or her decision will not be disturbed unless the plaintiff can show that the trial justice overlooked or misconceived material and relevant evidence or was otherwise clearly wrong." *Id.* (quoting *Kemp*, 184 A.3d at 719). "However, with respect to a motion for a new trial on questions concerning 'an alleged error of law, our review is *de novo*.'" *Berman v. Sitrin*, 101 A.3d 1251, 1260 (R.I. 2014) (quoting *Children's Friend & Service v. St. Paul Fire & Marine Insurance Company*, 893 A.2d 222, 229 (R.I. 2006)).

### III

### Discussion

Before this Court, defendants argue: (1) that the trial justice erred when he permitted the jury to render a verdict on the conversion claim because the economic loss doctrine barred recovery under such a claim; and (2) that the trial justice erred in awarding attorneys' fees to plaintiff pursuant to § 9-1-45.

### A

### Economic Loss Doctrine

The defendants argue that plaintiff should have been precluded from an award of damages for the tort of conversion because plaintiff did not suffer any personal injury. The defendants contend that the economic loss doctrine declares that commercial transactions are more properly suited to the law of contract than to the law of tort, and that sophisticated commercial entities should resort to contract law rather than tort law to seek economic damages. The defendants stress that the parties were commercial entities entering into a lease for commercial property and, therefore, plaintiff should have been barred from recovering under a tort remedy in this case.

However, upon reviewing the record in the Superior Court, we note that defendants filed a motion to dismiss based on the economic loss doctrine argument just before trial was to begin. The plaintiff objected that he had not received proper notice of the motion to dismiss, and the trial justice, correctly in our opinion, dismissed the motion as not timely. The defendants never raised the economic loss doctrine argument again until the posttrial hearings, which took place well after the jury had rendered a verdict for plaintiff on the conversion claim. We are therefore of the opinion that, because defendants never raised the economic loss doctrine argument during trial, and because the alleged error of law was an entirely new issue raised at the hearing on the motion for a new trial, it has been waived by defendants. In *Tyre v. Swain*, 946 A.2d 1189 (R.I. 2008), we held that a party may not raise an entirely new issue during a hearing on a motion for a new trial; rather, claims of an alleged error of law may be raised only if the party had previously made that argument at a preverdict stage of the trial. *See Tyre*, 946 A.2d at 1202. It is well settled that, "in accordance with this Court's longstanding raise-or-waive rule, if an issue was not properly asserted, and thereby preserved, in the lower tribunals, this Court will not consider the issue on appeal." *Adams v. Santander Bank, N.A.*, 183 A.3d 544, 548 (R.I. 2018) (brackets omitted) (quoting *Miller v. Wells Fargo Bank, N.A.*, 160 A.3d 975, 980 (R.I. 2017)). We conclude without hesitation that defendants have waived the economic loss doctrine argument and may not now revive the argument on appeal.

**B**

**Attorneys' Fees**

The defendants next contend that the trial justice erred when he awarded attorneys' fees to plaintiff pursuant to § 9-1-45. The defendants argue that that statute confines an award for attorneys' fees to situations in which there has been a finding of breach of contract by the party

against whom the attorneys' fees are awarded. The defendants point out to this Court that the jury never made a finding that defendants had breached a contract, and therefore argue that it was error for the trial justice to award plaintiff attorneys' fees under § 9-1-45.

Section 9-1-45 provides the following:

> "The court may award a reasonable attorney's fee to the prevailing party in any civil action arising from a breach of contract in which the court:
>
> > "(1) Finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party; or
> >
> > "(2) Renders a default judgment against the losing party."

"This Court 'staunchly adheres to the 'American rule' that requires each litigant to pay its own attorney's fees absent statutory authority or contractual liability.'" *Arnold v. Arnold*, 187 A.3d 299, 315 (R.I. 2018) (brackets omitted) (quoting *Danforth v. More*, 129 A.3d 63, 72 (R.I. 2016)). "[T]he issue of whether there exists a *basis* for awarding attorneys' fees generally is legal in nature, and therefore our review of such a ruling is *de novo*." *In re Estate of Brown*, 206 A.3d 127, 134 (R.I. 2019) (quoting *Blue Cross & Blue Shield of Rhode Island v. Najarian*, 911 A.2d 706, 709 (R.I. 2006)). "Only if it is determined that there is such a basis, then this Court will review a [trial] justice's actual award of attorneys' fees for an abuse of discretion." *Id.* (quoting *Najarian*, 911 A.2d at 709).

After careful consideration of the record, we conclude that there is no basis for the award of attorneys' fees in this case. Section 9-1-45, titled "Attorney's fees in *breach of contract actions*," grants the court the discretion to award a reasonable attorneys' fee to the prevailing party "in any civil action *arising from a breach of contract*[.]" Section 9-1-45 (emphasis added). We recognize that plaintiff alleged a breach of contract claim against defendants in his complaint. However, plaintiff did not pursue that claim at trial and, significantly, there was no jury charge

instructing the jury on a breach of contract claim against defendants. Further of note, there was no objection to the charge that the trial justice imparted to the jury. Indeed, the jury found only that plaintiff prevailed on his conversion claim; there was no verdict for a claim by plaintiff for breach of contract. *See Women's Development Corporation v. City of Central Falls*, 764 A.2d 151, 156 (R.I. 2001) (defining § 9-1-45 as "allow[ing] an award of attorney's fees for a party's prosecution of nonjusticiable *breach-of-contract claims*") (emphasis added); *see also Glassie v. Doucette*, 159 A.3d 88, 98 (R.I. 2017) (holding that a dispute over a bequest in a will was "not a 'civil action arising from a breach of contract'" and that, consequently, there was "no basis under § 9-1-45 for an award of attorney's fees"). Therefore, it is our opinion that § 9-1-45 cannot be the basis for an attorneys' fees award in this case, and, consequently, that part of the judgment awarding attorneys' fees to plaintiff under that statute must be vacated.

**IV**

**Conclusion**

For the foregoing reasons, the judgment entered in the Superior Court is affirmed in part and vacated in part. The papers are remanded to the Superior Court for entry of judgment consistent with this opinion.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Daryl Heneault v. Kenneth Lantini et al. |
| **Case Number** | No. 2018-195-Appeal.<br>(PC 14-2370) |
| **Date Opinion Filed** | June 27, 2019 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Associate Justice Francis X. Flaherty |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice William E. Carnes, Jr. |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Kenneth Kando, Esq.<br>For Defendants:<br><br>Gregory J. Acciardo, Esq. |