June 22, 2021

**Supreme Court**

No. 2019-144-Appeal.
(KC 18-309)

Vikash Patel et al.        :

v.        :

Rasikbhai Patel et al.        :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

**Supreme Court**

No. 2019-144-Appeal.
(KC 18-309)
(Concurrence begins on Page 26)

Vikash Patel et al.                    :

v.                    :

Rasikbhai Patel et al.            :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Lynch Prata, for the Court.**  The defendants, father and son Rasik and Rakesh Patel, appeal from a judgment entered in the Superior Court after a jury found in favor of the plaintiffs, brothers-in-law Vikash and Andy Patel, as well as from an order of the Superior Court denying the defendants' motion for a new trial.[1] On appeal, the defendants contend that the trial justice erred in permitting consideration of prior oral agreements under the parol evidence rule, that the justice impermissibly allowed for enforcement of an illegal scheme, that the trial justice

---

[1] Because all parties in this matter share the last name Patel, the Court will refer to them by their first names.  No disrespect is intended.  Additionally, the Court adopts the use of Rasik and Andy, rather than Rasikbhai and Ankit, for brevity and consistency.  These parties were referred to throughout the record by both versions of their names.  While Rasik and Rakesh are father and son and Vikash and Andy are brothers-in-law, plaintiffs are not related to defendants.

abused his discretion by admitting a recording they allege was illegally made to impeach a witness's testimony, and, finally, that the trial justice erred in denying their motion for a new trial. For the reasons set forth in this opinion, we affirm the judgment and order of the Superior Court.

## Facts and Travel

Before this Court are two versions of a tale regarding a joint venture to purchase and operate Big River Spirits, a liquor store located at 6 Nooseneck Hill Road in West Greenwich, Rhode Island. All parties to the loan to purchase the store agree that, on May 4, 2017, they arrived at the offices of counsel for Rockland Trust Company (Rockland) to sign the closing documents. There is also no dispute that, during the closing, the ownership percentages for the two named partners, plaintiff Vikash and defendant Rasik, were altered by hand to reflect different shares, shifting from 50/50 to 80/20 in favor of Rasik. However, at trial plaintiffs alleged that this alteration was intended as a temporary adjustment to satisfy the lender's closing requirements and that all parties agreed that they would later revert to the percentages earlier settled upon. The defendants argued that the altered ownership shares should stand, because that is what the written agreement states. A proper examination of the instant matter thus requires that the Court briefly recount the history of the deal.

At trial, Andy testified that Rakesh, an old friend from New York, reached out to him in August or September 2016, looking for a partner to purchase Big River Spirits. According to defendants Rakesh and his father Rasik, however, the entire deal was the result of Rasik's dream of owning a liquor store. While Rakesh also testified that he had been the one who contacted Andy about the deal, he claimed that Andy signed the initial offer to purchase Big River Spirits simply as a friend who was helping Rakesh out. An attorney hired by Rakesh and Andy then drafted purchase agreements that listed Andy and Rakesh's father, Rasik, as the buyers.[2] When the agreements were signed, Andy testified, he and Rakesh had agreed that they would split the ownership 50/50.

Andy testified that he performed a number of tasks in preparation for the closing: assisting with the loan; transferring the liquor, cigarette, and lottery licenses; coordinating and paying for the environmental testing of the property; and paying for the appraisal. When Rakesh had difficulty securing financing due to his father's limited income, Andy recommended Rockland, with whom he had done business before.

According to Andy, Sergio DoRego, a vice president of commercial lending at Rockland, later told them that, due to the outstanding debt Andy had with

---

[2] Both Andy and Rakesh testified that Rakesh had a "legal issue" that prohibited him from owning a business with a lottery, tobacco, or liquor license.

Rockland from his other business ventures, if he was listed as owning 20 percent or more of Big River Spirits, their loan would have to undergo a much stricter approval process. As a result, according to Andy, he and Rakesh orally agreed that the loan application would be submitted with Rakesh's father Rasik listed as owning 85 percent and Andy owning 15 percent, although the actual ownership percentages would remain 50/50. DoRego testified that he understood that the 85/15 split did not reflect the final ownership percentages and that he had informed his supervisor that it might change later. According to Andy, due to Rasik's limited income, his son Rakesh had to provide collateral in the form of the convenience store located at 360 Main Street in East Greenwich, Rhode Island, which was owned by Rakesh and Rasik through an entity named "360 Shreeji, Inc."[3]

At that point, Andy testified, he and Rakesh began looking for someone to manage Big River Spirits. Andy suggested that they reach out to his brother-in-law, Vikash. Vikash was living in New Jersey; but, after driving to Rhode Island and visiting the store, he told his brother-in-law Andy that he would be interested in relocating to manage the store if he could be a 60-percent owner. After some negotiation, during which the three agreed that Vikash would own 50 percent,

---

[3] Rakesh testified that he had been removed as president of 360 Shreeji, Inc. because of certain legal issues, but acknowledged at trial that he continued to have an ownership interest in the company. Similarly, his father Rasik testified both that Rakesh was no longer his partner at 360 Shreeji, Inc. and that he had signed a document indicating that Rakesh was still his partner in that company.

Rakesh then asked for a greater ownership percentage, and Andy agreed to give 5 percent of his share to Rakesh. The final ownership percentages agreed to by the parties, according to Andy, were 50 percent for Vikash, 30 percent for Rakesh, and 20 percent for Andy.[4]

Rakesh next questioned why only his father, Rasik, was providing a guarantee for the loans. Although Vikash met with DoRego and filled out a personal financial statement, DoRego ultimately advised Vikash that adding him to the loan would require reprocessing and could delay the closing, which had already been rescheduled once. According to Vikash, everyone agreed to proceed with the loan under the previously drafted agreements and change the ownership percentages after closing, not wanting to jeopardize the purchase. Two separate Rhode Island limited liability companies would own the business and real estate.[5] Their attorney drafted operating agreements for the companies, listing Vikash and Rasik as each owning 50 percent of the companies, again purportedly to placate Rockland, because Rasik was the only approved guarantor of the loan.

---

[4] Vikash testified that Andy and Rakesh told him that Rakesh was a partner under his father's name.

[5] Gunatit, LLC, the business entity, was named by Rakesh and his father. However, plaintiffs Vikash and Andy both testified that Vikash named the entity that would own the Big River Spirits property "Vik And Rak, LLC," indicating the involvement of each of the three owners, Vikash (Vik), Andy (And), and Rakesh (Rak). While defendant Rakesh eventually acknowledged at trial that the entity's name could stand for the owners' names, he also attempted to argue that "Vik" could stand for "Vishnu" and that "Rak" could stand for "Rasik."

Present at the closing on May 4, 2017, were Vikash, Andy, Rakesh, Rasik, the seller, DoRego, and Stanley Sheer, the real estate broker who had the listing, as well as attorneys for the seller, purchasers, and Rockland. Andy testified that because the closing occurred in a small conference room, he, Rakesh, and Sheer sat just outside in the lobby, only sometimes going into the room while the closing took place.

Vikash, Andy, and their attorney all testified that, during the closing, Rockland's counsel explained that the bank needed the ownership percentages to change from 50/50 to 80/20 in favor of Rasik in order to close, because Vikash was not a guarantor at that time. According to plaintiffs, at that point Rakesh, Rasik, DoRego, Andy, and Vikash stepped outside of the conference room to consult with each other about going forward. Rasik testified that he never left the table during the closing.

Vikash and Andy testified that DoRego told them they could change the percentages back to the previously agreed split a few months after closing.[6] The brothers-in-law also testified that Rakesh explained all of this to his father Rasik in his native language, Gujarati, due to his limited English, and that both of them agreed.[7] According to Andy, the change was necessary because they needed to close

---

[6] DoRego's deposition testimony was that Rockland would be fine with a later 70/30 split in favor of Vikash, as long as there was an additional guarantor.
[7] DoRego and the seller's attorney both recalled discussions being conducted in a foreign language.

on May 4, 2017: the seller was buying a house three days later on May 7, so there could be no further delay. Andy testified that, after the parties had all agreed that they would change the ownership split back in a few months, Vikash and Rasik returned to the conference room to initial the changes to the ownership percentages.

At trial, Rakesh testified that he did not know why the ownership percentages on the operating documents were changed from 50/50 to 80/20 in favor of his father, and that he did not remember the discussion outside of the conference room. He claimed that his father told him that the changes were made because of "collateral," and Rasik later testified that the ownership percentages were changed to 80/20 at the closing because Vikash had not offered property as collateral for the loans. Eventually, Rakesh admitted in his testimony that the changes occurred because Vikash had not been a guarantor for the loans, acknowledging that the changes had been made at Rockland's request.

After the closing, Vikash began working full-time as manager of the store, completing several credit applications with liquor distributors on behalf of the business. Rakesh also worked there, manning the cash register. His father, Rasik, never worked at Big River Spirits.

Three weeks after the closing, Vikash began the process of trying to have the agreements modified to show a 50/30/20 ownership division, emailing DoRego at Rockland, who consented to the change by letter. Vikash also requested that an

attorney draft revised operating agreements to reflect these percentages. However, defendants Rakesh and Rasik refused to modify the documents. Consequently, Vikash testified, he attempted to add his father Mahendra's name to the business, as Mahendra no longer trusted Rakesh.[8]

Andy and Mahendra testified that, at a July 2017 meeting, Mahendra asked Rakesh to modify the ownership percentages, but Rakesh claimed it did not make sense for Vikash to change it, for tax reasons, eventually saying that "there won't be any changes" and that "[w]hat it was on the paper, they were bound to that." Andy also testified that, at that meeting, Rakesh eventually told them: "I'm not going to change it. Do whatever you got to do. On the paper it says 80% I'm owner and 20% Vikash owner, you can't do nothing to me." Later that year, there was another meeting during which Rakesh again told Andy, "[W]e are 80% on the paper. You are 20%. You can't do nothing to us." On October 8, 2017, Andy sent Rakesh a text message, asking him to honor the prior agreement, but Rakesh only responded, "Hi."

In January 2018, DoRego sent a letter to Gunatit, LLC, memorializing his understanding that the only reason the percentages had been altered at the closing was because of time constraints, and that the bank had always understood that the

---

[8] According to plaintiff Vikash and his father, Mahendra, they understood that the changes to the operating agreement would require providing a personal guaranty for the loans and that Mahendra planned to provide his $600,000 home as collateral.

percentages would be changed after closing. However, defendants persisted in their refusal to change the percentages and had the store's accountant file their taxes reflecting the 80/20 ownership split, over Vikash's objections.

Vikash then filed this instant action, suing defendants Rakesh and Rasik for breach of contract and seeking declaratory judgment. The defendants denied the allegations and counterclaimed for breach of contract, breach of Vikash's fiduciary duties, and declaratory judgment. Vikash subsequently filed an amended complaint, adding his brother-in-law Andy as a plaintiff and including a claim for fraud.

At a pretrial hearing, defendants filed a motion *in limine* to bar the introduction of parol evidence, and the trial justice ruled that the claim of fraud in the inducement allowed for the introduction of parol evidence, although unlimited parol evidence would not be allowed.[9] The trial then commenced and lasted for eight days. At the conclusion of plaintiffs' case, defendants filed a motion for judgment as a matter of law, and the trial justice reserved his decision. The only arguments defendants made in their motion were that there was insufficient evidence to demonstrate fraud and that the evidence did not show that Rakesh was an agent of his father, Rasik.[10]

---

[9] While the trial justice's ruling on the admission of parol evidence was later referenced by the parties, defendants did not make subsequent or ongoing objections to the introduction of parol evidence during the trial.
[10] The plaintiffs argued that their evidence actually showed that Rakesh was the principal and his father, Rasik, was his agent.

At the outset of their case, defendants presented testimony from Sheer, the realtor, who initially claimed that he did not recall a break happening at the closing, only to be impeached by an audio recording made by Andy of a conversation between him and Sheer in which Sheer acknowledged the break during the closing. When defendants objected to not having received the audio recording in discovery, plaintiffs noted that Andy had not been a party when certain discovery requests were made that were directed only at Vikash. Initially, the trial justice allowed plaintiffs to play the recording to Sheer outside of the presence of the jury, to see if it refreshed his recollection.

In the recording, Sheer could be heard to state, "I was there when, you know, in the office when you and Sergio and everybody, you know, went outside, but I wasn't outside. I saw you guys get up and go out there." Sheer then testified that his memory had been refreshed, that he recalled only Andy and DoRego leaving the conference room, but that he still did not remember a break during the closing. Subsequently, defendants asked the court to bar the use of the recording as a sanction for the failure to provide it during discovery. Finding no discovery violation, the trial justice permitted plaintiffs to play the recording before the jury to impeach Sheer's testimony when he again testified that he did not recall a break at the closing. After the audio was played for the jury, Sheer testified that he did not remember the attorneys or Rasik leaving the conference room.

At the conclusion of testimony, when asked by the trial justice whether there were any other motions, defendants' counsel answered, "As far as I know, your Honor, we don't have anything pending."[11] The jury returned a verdict in plaintiffs' favor, finding that there was an oral agreement among the partners Vikash, Rakesh, and Andy as to their ownership percentages, which the jury found as 50/30/20, respectively. Final judgment reflecting the jury's verdict entered on November 27, 2018. The defendants timely appealed.

On December 27, 2018, the trial justice heard defendants' motion for a new trial, among other postjudgment motions. The trial justice stated that he did not recall defendants objecting to the introduction of parol evidence at trial. He further stated that the handwritten change from 50/50 to 80/20 ownership within a matter of minutes, at closing, merited the use of parol evidence to explain the circumstances. The trial justice found that the 50/30/20 oral agreement was not fraudulent in itself, indicating that the only arguable claim was that the 80/20 agreement might have been fraudulent toward the bank.

The plaintiffs argued that defendants had failed to raise the issues of either parol evidence or illegality in a renewed motion for judgment as a matter of law and

---

[11] The defendants later claimed that the transcript was incorrect, filing a motion to correct and asserting that they did, in fact, renew their motion for judgment as a matter of law. However, the trial justice determined that the transcript was accurate and therefore denied the motion to correct on January 4, 2019.

that parol evidence was admissible in support of plaintiffs' claim of fraud in the inducement. The trial justice agreed, again noting that defendants also had not objected to the use of parol evidence at trial. Furthermore, the trial justice found that the oral agreement in this case was not illegal. He also ruled that the audio recording of Sheer was proper for impeachment and not unduly prejudicial. Finally, after analyzing the evidence presented at trial, the trial justice found that there was sufficient evidence to support the jury's verdict and that he would have reached the same conclusion. Therefore, the trial justice denied defendants' motion for a new trial.

The order denying defendants' motion for a new trial also indicated that defendants' motions to amend their answer, renew their motion for judgment as a matter of law, and vacate the judgment were denied as well. The defendants timely appealed.[12]

## Discussion

## I

## Denial of Defendants' Motion for a New Trial

Taking their final and best-preserved argument first, this Court examines defendants' argument that the trial justice erred in denying their motion for a new

---

[12] While defendants filed two notices of appeal in the Superior Court, only one appeal was docketed in this Court.

trial, because, they contend, the weight of the evidence did not support the jury's verdict. The defendants also claim that they should be allowed to argue errors of law within their motion for a new trial, despite their failure to properly renew their motion for judgment as a matter of law.

This Court's "review of a trial justice's decision on a motion for a new trial is deferential." *Heneault v. Lantini*, 213 A.3d 410, 415 (R.I. 2019) (quoting *Letizio v. Ritacco*, 204 A.3d 597, 602 (R.I. 2019)). "In considering a motion for a new trial, the trial justice sits as a super juror and is required to make an independent appraisal of the evidence in light of [the justice's] charge to the jury." *Id.* (quoting *Letizio*, 204 A.3d at 602). "In making that independent appraisal, the trial justice 'can weigh the evidence and assess the witnesses' credibility.'" *Botelho v. Caster's Inc.*, 970 A.2d 541, 545 (R.I. 2009) (quoting *Kurczy v. St. Joseph Veterans Association, Inc.*, 713 A.2d 766, 770 (R.I. 1998)). "In addition, [the trial justice] 'can reject some evidence and draw inferences which are reasonable in view of the testimony and evidence in the record.'" *Id.* (quoting *Kurczy*, 713 A.2d at 770).

"If, after conducting this analysis, the trial justice concludes that the evidence is evenly balanced or that reasonable minds could differ on the verdict, [the justice] should not disturb the jury's decision." *Heneault*, 213 A.3d at 415 (quoting *Letizio*, 204 A.3d at 602). "If the trial justice has performed this task, then [the justice's] decision will not be disturbed unless the [party challenging that decision] can show

that the trial justice overlooked or misconceived material and relevant evidence or was otherwise clearly wrong." *Id.* (quoting *Letizio*, 204 A.3d at 602).

"However, with respect to a motion for a new trial on questions concerning an alleged error of law, our review is *de novo*." *Heneault*, 213 A.3d at 415 (quoting *Berman v. Sitrin*, 101 A.3d 1251, 1260 (R.I. 2014)); *see Shine v. Moreau*, 223 A.3d 315, 318 (R.I. 2020) ("When this Court is presented with a pure question of law, this Court conducts a *de novo* review.").

This Court has repeatedly held that "a party may not raise an entirely new issue during a hearing on a motion for a new trial; rather, claims of an alleged error of law may be raised only if the party had previously made that argument at a preverdict stage of the trial." *Heneault*, 213 A.3d at 416; *see Tyre v. Swain*, 946 A.2d 1189, 1202 (R.I. 2008).

Here, in their motion for judgment as a matter of law at the close of plaintiffs' case, defendants argued only that plaintiffs had not proven fraud, because, according to defendants, there had been no fraudulent statements by Rasik, and that his son Rakesh had not been proven to be an agent of Rasik. The defendants also contended that there could be no breach of contract because plaintiff Andy had not signed anything. The defendants' later arguments regarding parol evidence, illegality, and the statute of frauds were not preserved in a proper motion for judgment as a matter of law, and therefore are waived.

Additionally, to preserve the issues for our review, defendants' arguments for judgment as a matter of law had to be rearticulated in a renewed motion for judgment as a matter of law. This Court has continually "reaffirmed 'our established rule that if one party makes a motion for judgment as a matter of law at the close of the opponent's case and then presents evidence on [the party's] * * * own behalf, the motion must be renewed at the close of all the evidence.'" *Ribeiro v. Rhode Island Eye Institute*, 138 A.3d 761, 774 (R.I. 2016) (brackets omitted) (quoting *Skaling v. Aetna Insurance Co.*, 742 A.2d 282, 287 (R.I. 1999)); *see id.* (holding that "[f]ailure to do so means 'the earlier motion is deemed waived and may not be reviewed'") (quoting *Skaling*, 742 A.2d at 287). However, defendants in the present case "waited until after the jury returned its verdict to renew the motion for judgment as a matter of law[,]" and therefore, "[w]hatever the merits of these arguments may be, we will not address them." *Id.*

Finally, defendants also attempted to resurrect their parol evidence argument in their motion for a new trial. However, a party's "decision to challenge the trial justice's ruling by moving for a new trial under Rule 59, instead of by renewing its motion under Rule 50, [is] a procedural misstep that results in a waiver of the argument * * * on appeal to this Court." *Blue Coast, Inc. v. Suarez Corporation Industries*, 870 A.2d 997, 1009 (R.I. 2005); *see Tyre*, 946 A.2d at 1202 (holding that "[w]hat the present version of Rule 59 *does* authorize is a[n] * * * argument * * * in

which counsel seeks to convince the trial justice of the soundness of a legal argument that counsel previously had made at a pre-verdict state of the trial").

This Court has declared that "[a] trial justice, in ruling on a new trial motion, need not exhaustively review all the evidence and testimony presented at trial but need refer only to those facts and portions of the evidence that motivated [the trial justice's] conclusion." *Franco v. Latina*, 840 A.2d 1110, 1114 (R.I. 2004). This Court requires only that the trial justice's "recitation of the evidence * * * be sufficient to allow us to determine, on appeal, whether the trial justice has applied the appropriate standards." *Id.*

Here, the trial justice performed a comprehensive review of the evidence, comprising twenty pages of analysis, before agreeing with the verdict. We find compelling the trial justice's statement that "the [c]ourt found defendants' version of events and their witnesses not credible[,]" particularly the testimony of Rakesh, whose story at trial differed from that given previously in his deposition on several points, and defendants' overall theory that Rasik had a lifelong dream of owning a liquor store although he was "completely absent from its management." We find no indication that the trial justice overlooked or misconceived any of the material evidence and consequently discern no error. Therefore, this Court declines to disturb the trial justice's ruling on defendants' motion for a new trial.

## II

## Admissibility of the Audio Recording

The defendants also contend that the trial justice abused his discretion in admitting the audio recording of Sheer at trial. The defendants claim that plaintiffs violated discovery rules by failing to provide the recording before trial and that the court should have excluded the recording as a sanction. They also assert that the recording was made illegally and contend that its introduction was extremely prejudicial.

We have held that the purpose of our discovery rules "is to enable litigants to prepare for trial free from the elements of surprise and concealment so that judgments can rest upon the merits of the case rather than the skill and maneuvering of counsel." *Gormley v. Vartian*, 121 R.I. 770, 775, 403 A.2d 256, 259 (1979). However, this Court "will not disturb a decision by a Superior Court justice relating to discovery save for an abuse of discretion." *Corvese v. Medco Containment Services, Inc.*, 687 A.2d 880, 881-82 (R.I. 1997). Even under those circumstances, our review also asks whether the "alleged [discovery] violation prejudiced defendant[s.]" *Neri v. Nationwide Mutual Fire Insurance Company*, 719 A.2d 1150, 1152 (R.I. 1998). Furthermore, we have previously "stated that the admissibility of evidence is within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear abuse of that discretion is

apparent." *Soares v. Nationwide Mutual Fire Insurance Company*, 692 A.2d 701, 701-02 (R.I. 1997) (mem.).

Here, Sheer was first confronted with his prior inconsistent statement out of the jury's hearing, but he persisted in saying on the record that he did not recall a break in the closing. The rules of evidence clearly allow for the impeachment of a witness with a prior inconsistent statement under circumstances such as these. *See United States v. Richardson*, 515 F.3d 74, 84 (1st Cir. 2008) (holding, in the context of a federal criminal case, that "otherwise inadmissible evidence" could be used to impeach a testifying criminal defendant with their prior inconsistent statement); *see also State v. Mattatall*, 603 A.2d 1098, 1111 (R.I. 1992) (reaffirming that "[e]ven illegally obtained evidence may be admitted for impeachment purposes" against a criminal defendant under certain circumstances, despite heightened constitutional protections) (quoting *State v. Dowell*, 512 A.2d 121, 124 (R.I. 1986)).

When defendants raised their arguments about the use of the audio recording in the context of their motion for a new trial, the trial justice addressed their concerns in detail. The trial justice noted that Rhode Island allows one-party consent to a recording, stating that if the recording was made in Massachusetts, it was a matter for that state's courts. The trial justice refused to impose discovery sanctions because he found that the evidence showed that plaintiff Vikash did not have the recording when discovery was proceeding and that the recording was not within the

scope of the subpoena to plaintiff Andy, which subpoena only requested documents and communications related to the companies. Finally, the trial justice properly stated that it was within his discretion whether or not to sanction plaintiffs, observing that plaintiffs' attorney was an officer of the court who stated that he did not have the recording until the morning of the day it was used in court. *See Senn v. Surgidev Corp.*, 641 A.2d 1311, 1320 (R.I. 1994) ("Our standard of review for evaluating sanctions for Rule 37 violations is abuse of discretion."). The Court therefore finds no abuse of discretion in the trial justice's admission of the audio recording to impeach Sheer.

## III

## The Raise-or-Waive Rule

"It is well settled that, 'in accordance with this Court's longstanding raise-or-waive rule, if an issue was not properly asserted, and thereby preserved, in the lower tribunals, this Court will not consider the issue on appeal.'" *Heneault*, 213 A.3d at 416 (quoting *Adams v. Santander Bank, N.A.*, 183 A.3d 544, 548 (R.I. 2018)). "It should be borne in mind that, in order to satisfy the strictures of our 'raise-or-waive' rule, an evidentiary objection must be 'sufficiently focused so as to call the trial justice's attention to the basis for said objection[.]'" *State v. Diefenderfer*, 970 A.2d 12, 30 (R.I. 2009) (quoting *State v. Warren*, 624 A.2d 841, 842 (R.I. 1993)). "We require a specific objection so that the allegation of error can

be brought to the attention of the trial justice, who will then have an opportunity to rule on it." *State v. Pona*, 66 A.3d 454, 468 (R.I. 2013).

**Parol Evidence**

The defendants argue that, because the jury made no findings on fraud, never addressing those issues on the verdict form, the parol evidence rule should have excluded evidence of the parties' prior alleged oral agreement and that the trial justice erred in admitting it.

It is clear to the Court that this matter has not been properly preserved for our review. "This Court has consistently held that a failure to object 'in the vital context of the trial itself (except where the *in limine* ruling was unequivocally definitive) constitutes a waiver of the evidentiary objection and is therefore an issue that may not be raised on appeal.'" *State v. Gadson*, 87 A.3d 1044, 1053-54 (R.I. 2014) (brackets omitted) (quoting *State v. Andujar*, 899 A.2d 1209, 1222 (R.I. 2006)). When defendants challenged the admissibility of parol evidence on the parties' prior oral agreement in their pretrial motion, the trial justice did not make an unequivocally definitive ruling. The trial justice stated that the "fraud in the inducement claim allows for parol evidence" and that he was also "interested in the circumstances" surrounding the changes to the operating agreements at closing, stating, "I don't think it's unlimited[.]" Therefore, defendants had a continuing

obligation to object to the admission of parol evidence during the trial itself, to preserve their objection.

The defendants argue that their objection to the admission of parol evidence was preserved by their objections to the jury instructions and verdict forms. This is unpersuasive under these circumstances, however, where defendants participated in the discussions creating the relevant jury instructions and verdict form but did not object to the final versions with any degree of specificity. Rule 51(b) of the Superior Court Rules of Civil Procedure provides, in pertinent part, that:

> "No party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the party's objection."

In *Tyre*, cited *supra*, this Court unequivocally stated that Rule 51(b) requires "a timely objection to the jury instructions before the jury deliberates." *Tyre*, 946 A.2d at 1201.

In the case at bar, defendants objected to a proposed jury instruction, stating that "prior oral agreements can be modified [by] later signed written agreements" because it was "all Massachusetts law, is not the law in Rhode Island[.]" During their objection, defendants mentioned (as background) the previous discussions about parol evidence between the parties and the court. However, defendants cannot and do not point to a later objection to the jury instructions regarding fraud in the

inducement or to the verdict form regarding the absence of a question related to fraud.[13]

Instead, defendants argue that the trial justice's subsequent discussion of whether or not there was an integrated agreement relieved them of their burden to object to parol evidence specifically in the context of the jury instructions or the absence of fraud in the final verdict form. This is simply not accurate. *See Dawkins v. Siwicki*, 22 A.3d 1142, 1158 (R.I. 2011); *Tyre*, 946 A.2d at 1201 ("As we have frequently pointed out, Rule 51(b) bars a party from challenging an erroneous instruction unless the party lodges an objection to the charge which is specific enough to alert the trial justice as to the nature of the trial justice's alleged error.") (brackets omitted) (quoting *Mead v. Papa Razzi*, 899 A.2d 437, 443 (R.I. 2006)).

Furthermore, even if defendants' objection was preserved for our review, defendants' arguments would be unavailing under this Court's parol evidence jurisprudence. The Court notes that fraud in the inducement was alleged by plaintiffs and presented to the jury. *See Carlsten v. Oscar Gruss & Son, Inc.*, 853 A.2d 1191, 1196 (R.I. 2004) (holding that "parol evidence is admissible in connection with proving a claim for fraud in the inducement of a contract") (quoting *Bjartmarz v.*

---

[13] The defendants' sole objection to a final jury instruction was made to an instruction regarding the law of agency. Furthermore, at the hearing on their posttrial motions, defendants' counsel explicitly stated, "I'm not saying I had a problem with the jury verdict form."

*Pinnacle Real Estate Tax Service*, 771 A.2d 124, 127 (R.I. 2001)).  The trial justice repeatedly noted that fraudulent inducement had been alleged and that the parol evidence of the oral agreement would be admissible for that reason.  The trial justice also determined that, because the jury had found that an agreement existed that was not limited to the written terms, the jury also found fraud.  Sufficient evidence was presented to the jury to allow them to have made such a finding.[14]  We are also hard-pressed to determine whether—and, if so, when—the agreement became an integrated final agreement.[15]  Consequently, it is clear that the trial justice did not err in admitting parol evidence of the parties' prior oral agreement.

---

[14] The defendants' argument that the jury was required to make explicit findings on fraud, an issue absent from the special verdict form, overlooks Rule 49(a) of the Superior Court Rules of Civil Procedure, which states in relevant part that "the court may make a finding" regarding an "issue of fact raised by the pleadings or by the evidence" which is omitted from a special verdict form, "or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."

[15] "The basis of the [parol evidence] rule is that a complete written agreement merges and integrates all the pertinent negotiations made prior to or at the time of execution of the contract." *Fram Corp. v. Davis*, 121 R.I. 583, 587, 401 A.2d 1269, 1272 (1979). Over the years, we have made clear that "[t]he parol-evidence rule is applicable only to integrated contracts[,]" *City of Warwick v. Boeng Corporation*, 472 A.2d 1214, 1219 (R.I. 1984), and that "[a] document is integrated when the parties adopt the writing as 'a final and complete expression of the agreement.'" *Filippi v. Filippi*, 818 A.2d 608, 619 (R.I. 2003) (quoting *Fram Corp.*, 121 R.I. at 587, 401 A.2d at 1272).

## Illegality of Oral Agreement

Next, defendants argue that, if an oral agreement existed, the trial justice erred by permitting its enforcement because that agreement amounted to an illegal scheme to falsify the parties' ownership interests, which is against public policy.

"Courts will not enforce contracts which are tainted with illegality." *G.W. McNear, Inc. v. American & British Mfg. Co.*, 42 R.I. 302, 317, 107 A. 242, 248 (1919). Similarly, this Court has held that "[i]t is a general rule that a contract or agreement against public policy is illegal and void." *City of Warwick v. Boeng Corporation*, 472 A.2d 1214, 1218 (R.I. 1984) (clarifying that "a contract or agreement is generally against public policy if it is injurious to the interests of the public, interferes with the public welfare or safety, is unconscionable, or tends to injustice or oppression").

Here, again, defendants failed to properly preserve this argument for appellate review. This Court has held that "[t]he matters of illegality and waiver are affirmative defenses that must be pleaded under the provisions of Rule 8(c) of the Superior Court Rules of Civil Procedure" and that, when a party fails to plead such an affirmative defense, it is deemed waived. *Kelly v. C.H. Sprague & Sons Co.*, 455 A.2d 1302, 1304 (R.I. 1983). Here, the trial justice denied defendants' posttrial

motion to amend their pleading to add illegality.[16]  The trial justice also found no evidence that the affirmative defense of illegality was raised and tried by implied consent of the parties. *See Kelly*, 455 A.2d at 1305 (finding illegality not tried by implied consent where the "defendants did not seek jury instructions on these alleged issues, nor did they object to the jury charge that contained no reference to illegality").

Yet even had they done so, we find no error in the trial justice's determination that there was nothing inherently illegal in the oral agreement between the parties.[17] Evidence was submitted at trial that it is common for parties to adjust and readjust the ownership percentages before, during, and after closing.  The altered percentages at closing reflected the current state of the collateral offered to the bank, and subsequent changes were contemplated under the assumption that parties receiving higher percentages would also become guarantors of the loan and offer collateral.

---

[16] The defendants had attempted, at pretrial, to argue that Rockland was an indispensable party, because "a loan officer participated in a fraud on the bank."  The trial justice denied this motion, "on the eve of trial[,]" noting that defendants had not filed a third-party complaint.  Outside of this motion, defendants made no further mention of illegality until their posttrial motion to amend their pleadings.

[17] As party to the alleged illegal scheme, the defendants also overlook this Court's long history of refusing to "aid either party" in such a case. *Sullivan v. Hergan*, 17 R.I. 109, 110, 20 A. 232, 233 (1890) ("No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act.").

## Conclusion

For the reasons articulated above, this Court affirms the judgment and order of the Superior Court. The papers in this case may be remanded to the Superior Court.

**Justice Robinson, concurring.** It is with reluctance and a decided lack of enthusiasm that I concur in both the reasoning and the result of the Court's opinion in this case. My reluctance and lack of enthusiasm are not due to any reservations as to what has been written. Quite to the contrary, I find the opinion to reflect careful analysis and to be a cogent piece of judicial writing. However, I feel obligated to voice my great displeasure at the unusual and suspect business dealings that gave rise to this regrettable piece of litigation. I cannot recall ever confronting a case to which was more applicable the famous Shakespearean epithet: "A plague o' both your houses."[1]

I yield, as I must, to the reality that some parol evidence was properly admitted because of the presence of a fraud in the inducement count in this case and because

---

[1] William Shakespeare, *Romeo and Juliet* act 3, sc. 1, l. 91, reprinted in *The Oxford Shakespeare: The Complete Works* 371, 385 (Stanley Wells & Gary Taylor eds., 2d ed. 2005).

certain other parol evidence is part of the record due to the fact that it was not objected to in a procedurally appropriate manner.[2]

Nonetheless, while I do not question that the majority's opinion properly applies existing Rhode Island law, I glimpse icebergs in the fog-shrouded ocean ahead. At so many junctures, our jurisprudence accords a genuine reverence to the written word. The parol evidence rule and also the statute of frauds are venerable examples of our society's and our judicial system's preference for the relative certainty that the written word so often provides.[3]

Yet here we have an assorted group of investors and entrepreneurs as well as stand-ins and a vice president of commercial lending from a federally insured bank, all focused on the purchase of a liquor store in a rural section of Rhode Island; and all (or most of them) allegedly engaged in a bizarre oral arrangement whereby the

---

[2]   I would hope that, in future cases of this nature, proper invocation of the parol evidence rule will result in far less chaotic litigation than occurred in this case.

[3]   This Court's jurisprudence with respect to the parol evidence rule being a rule of substantive law, which therefore renders it incapable of being waived, has not been consistent over the years. *See Philip Carey Manufacturing Co. v. General Products Co.*, 89 R.I. 136, 145, 151 A.2d 487, 492 (1959) ("[T]he parol evidence rule is a rule of substantive law and not merely a rule of evidence and any evidence violative of such rule, even though admitted without objection, will not be considered."); *see also Westinghouse Broadcasting Co., Inc. v. Dial Media, Inc.*, 122 R.I. 571, 580 n.8, 410 A.2d 986, 991 n.8 (1980). *But see Blue Coast, Inc. v. Suarez Corp. Industries*, 870 A.2d 997, 1008, 1009 (R.I. 2005) (determining that the appellant's contentions with respect to the admission of parol evidence were waived).

written documentation to be submitted to the bank would be but a transitory and ephemeral statement of the persons who will own the liquor store and in what percentage—all subject to a purportedly agreed-upon change in the provision about ownership percentages to be effectuated soon after the closing.

Although I concur in the result and the reasoning that supports it, I am writing separately so as to express my concern about the unsettling nature of the business dealings which occurred in this case. I do not think that societal good order or justice would be well served in a world where "signed contracts would be little more than scraps of paper, subject to the selective recollection of the parties in interest." *D'Antuono v. CCH Computax Systems, Inc.*, 570 F. Supp. 708, 714 (D.R.I. 1983) (Selya, J.).

Nonetheless, while I am personally displeased with the machinations that are described in the Court's opinion and while I wish that the written document were enforceable as written, I am duty-bound to assent to the reasoning in the Court's opinion. I am guided by the following profound statement of Judge John Minor Wisdom in the case of *Turner v. Atlantic Coast Line Railroad Co.*, 292 F.2d 586 (5th Cir. 1961): "[H]ard as our sympathies may pull us, our duty to maintain the integrity of substantive law pulls harder." *Turner*, 292 F.2d at 589.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Vikash Patel et al. v. Rasikbhai Patel et al. |
| **Case Number** | No. 2019-144-Appeal.<br>(KC 18-309) |
| **Date Opinion Filed** | June 22, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Zachary W. Berk, Esq. |
| | For Defendants:<br><br>Robert G. Flanders, Jr., Esq.<br>Timothy K. Baldwin, Esq. |